IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NEDRA ROSITA JONES, et al.,           :
                                       :
    Plaintiff,                         :
                                       :
       v.                              :     CIVIL NO. L-08-1517
                                       :
WAY OF HOPE, Inc.,                     :
et al.,                                :
    Defendants.                        :

## MEMORANDUM

Plaintiff Nedra Rosita Jones ("Jones") filed this action against Way of Hope, Inc. ("Way of Hope"), James Francois ("Francois") and Marie Fernelis ("Fernelis") (collectively, "Defendants") on June 11, 2008. Jones seeks damages from Defendants for non-compliance with federal and Maryland wage and hour laws.

Now pending is Jones's Motion for Summary Judgment. Docket No. 25. The motion has now been fully briefed. As explained herein, no hearing is necessary on the issue of liability. Summary Judgment, with respect to liability, will be GRANTED in favor of the plaintiff against Way of Hope, Inc., Marie Fernelis and James Francois. A hearing or trial is necessary in order to establish damages.

### I.   Background

This is a wage and hour case that Jones has brought against her former employers, Way of Hope Inc., Marie Fernelis and James Francois. Jones was employed by the Defendants as a caregiver and housekeeper at one of their assisted living facilities. Jones alleges that she was not paid adequately, including that she was paid below minimum wage, and that she received no overtime compensation.

Jones had many duties at the house where she worked for Defendants. In general, daily work began when the residents woke up, and ended in the evenings after residents were in bed. The residents at Hawthorne went to adult day care six days a week, Monday through Saturday. Residents were picked up for day care at 8:00 am and returned at 3:30 pm. Before they left for day care, Jones would cook breakfast for them, and make sure they were dressed appropriately. After they left for day care, she would clean the house, change the sheets, and do the laundry.

Jones was required to be at the house when the residents returned, and to cook dinner for them (which was served between 4:00 and 4:30pm). Jones alleges that she generally went to bed between 9:30 and 10:00 pm. On the Sundays that she worked, Jones would prepare breakfast, lunch and dinner for the residents as well as for any visitors of the residents who stayed to eat with them. The Defendants state in their interrogatories and depositions that as long as Jones completed all required work, she was free to do it whenever she wanted during the day. Given that she was required to be present at the house in the morning to prepare residents to go to day care, in the afternoon when they returned home to greet them and fix dinner, and in the evenings to put them to bed and to clean up, there was not a great deal of flexibility in her schedule. Furthermore, some of the residents required more care because of their level of their disability. The precise number of hours that Jones worked will be the subject of a hearing or trial, and is yet to be determined.

## II.     Standard of Review

The Court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Not any factual dispute will defeat a motion for summary judgment though. The Supreme Court has clarified that "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). In determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

## III.    Liability of Defendants

In her original complaint, Jones alleges that "[d]efendants are employers within the meaning of the term of the FLSA, 29 U.S.C. 203(d) and the Maryland Wage and Hour Law, Md. Ann. Code, Labor & Employment, 3-401(b)." Docket 1, paragraph 5. She moves for summary judgment on this issue.

In their Response, Defendants argue both that they are not employers of Jones, and that they paid her adequately. Docket No. 30. It is clear that both Fernelis and Francois are employers, as defined in the FLSA and Maryland Wage and Hour law, and should therefore be held liable. In their Answer at Docket No. 10, the Defendants "admit the allegations contained in paragraph 1 through 5 of the complaint" – including that they are employers within the meaning of the term in the FLSA and MWHL. The Defendants further admit that Fernelis is the

owner and operator of Way of Hope and that she hired Jones. Their Answer denies that Francois is the financial manager of Way of Hope, but admits that he exercised his authority to control the terms and conditions of Jones's employment and how much Jones was paid each week.  It is well-established that employers exercising the level of control that Francois and Fernelis did at Way of Hope are liable as employers for FLSA violations. See Chao, *supra*, at *37 (establishing that a corporate officer who played a primary role in almost every aspect of the operations was liable); and Reich v. Circle C. Investments, 998 F.2d 324, 329 (5th Cir. 1993) (an individual whose wife owned nightclub was FLSA employer even though his consulting agreement excluded personnel matters, where he hired dancers, signed payroll checks, gave instructions to employees).

Jones also moves for damages based on Defendants' violations of the minimum wage and overtime wage laws.  Congress enacted the Fair Labor Standards Act ("FLSA") in order to "protect all covered workers from substandard wages and oppressive working hours, labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers. Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739 (1981).  "To that end, the FLSA generally requires employers to compensate employees for all of the hours worked, at a rate that is not less than the federal minimum wage." Chao v. Self Pride, Inc., 2005 U.S. Dist. LEXIS 11653 (4th Cir. 2005).  In addition to mandating a minimum wage, the FLSA also requires that employers pay one and a half times the regular rate of pay for each overtime hour worked.  29 U.S.C. 207(a)(1) For the time that Jones was employed by Defendants, the minimum wage was $5.15 an hour.

The Maryland Wage and Hour Law ("MWHL") is the state parallel to the FLSA, and requires that employers pay applicable minimum wages to their employees.  It also mandates that Maryland employers pay their employees an overtime wage of "at least 1.5 times the usual hourly wage" for each "hour over 40 hours that an employee works during 1 workweek." Md. Ann. Cod. Lab. & Empl. §3-415(a), §3-420(a).

The compensation that Defendants provided for Jones was below the minimum required by both federal and Maryland law, even when based on the number of hours that Defendants admit Jones worked, which is significantly fewer hours that Jones alleges that she worked.  Under Defendants' compensation arrangement with Jones, Jones was paid $225 per workweek, which consisted of six days, Monday through Saturday.  She was also required to work several Sundays per month, for which she was not paid extra, and could "volunteer" to work other Sundays for which she was paid an additional amount of $80.00.

Though the parties disagree as to actual number of hours worked, the Defendants do not dispute that Jones worked overtime.  Defendants argue that she was adequately paid through cash and benefits, including room and board for both her base hours as well as overtime hours.

They maintain that Jones received cash of varying amounts, and that her share of room and board ($654.00 per month) should be counted to make up the total wages paid to Jones.

Though both federal and Maryland law allow room and board to be counted as wages, both laws regulate the manner in which room and board can be included.  These regulations require that records be kept detailing the value of room and board provided.  Here, the Defendants admit in their "Responses to Request for Admission" that not only did the they not maintain a record of Jones's hours, they did not maintain a record of any employees' hours.  They also acknowledge that they "did not provide Plaintiff with any document or documentation showing the amount of any deductions for room or board taken from Plaintiff's wages."  The Defendants have also not produced a copy of their 2006 1099 Form issued for Jones.

Because of the lack of documentation, any room and board provided for Ms. Jones by the Defendants cannot be counted under either Maryland or federal law.  Though the FLSA defines wages to include both actual paid wages, as well as "the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees" 29 U.S.C. § 203(m), the regulations also require an employer who deducts board, lodging and other facilities from an employee's wages to maintain and preserve records substantiating these costs on a workweek basis. 29 C.F.R. § 516.27(a) and (b).  The Defendants have maintained no such records.

Furthermore, Maryland law requires that if an employer plans to include board and lodging (termed "advantages") as part of a wage plan for an employee, the employer may not do so unless, *inter alia*, he/she receives written authorization by the employee.  Md. Code. Ann., Lab. & Empl., §3-503.  In the instant case there is no dispute that no such authorization was ever acquired, let alone recorded.  In their Response to Request for Admissions, Defendants admit that they never advised Jones, either orally or in writing, that they would take deductions from her wages for room and board.  Furthermore, the Defendants have failed to produce any receipts or documentation on the amount of cash that they allegedly gave to Jones for overtime work – they have simply listed amounts.   The failure to document the amount, the failure to obtain to written authorization from Jones, and the failure to include detailed documentation on the amount of room and board all preclude the Defendants from counting room and board within the wages paid to Jones.

Eliminating the room and board that Defendants alleged was part of Jones's salary, leaves only the $225.00 per week plus $80 for some Sundays.  Although she contends that she worked many more hours, the Defendants concede that Jones worked at least 42.5 hours per week and 59.5 hours per week on the weeks that she worked both Saturday and Sunday.  Therefore, her salary for weeks that included Sundays should have been $356.74.  Instead, she received $225 for the weeks in which she was required to work Sundays and $305 for the weeks in which she

volunteered to work Sunday.  If she did in fact only work 42.5 hours per week, as Defendants allege, then for the weeks that she did not work Sundays, her wages were nearly adequate.  (Minimum wage of $5.15 per hour and $7.73 for every hour over 40 times 42.5 equals $225.33.)

      The remaining issue in this case is how many hours per week Jones worked at the group home owned by the Defendants.  As noted above, the Defendants acknowledge that Jones worked overtime, though they maintain she worked only 42.5 hours per week.  The Defendants have admitted in their Answer that they maintained "no record of when of the time when Plaintiff arrived at or left the facility where she worked" (sic), though they have provided a time-table that appears to give estimates.  Jones provides an affidavit and time-table in which she details the hours that she worked at the assisted living facility.

      Only after resolving the matter of hours can the Court determine what, if any, damages are required.  A hearing or trial is necessary to determine the number of hours that Jones should be paid for.  A hearing or trial will be held on this issue alone.

Dated this 6th day of November, 2009                  /s/

                                                             Benson Everett Legg

                                                             Chief Judge